IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EICHNER GROUP, INC. d/b/a § <br> NATIONAL DISCOUNT MERCHANT § <br> SERVICES § <br> § <br> Plaintiff, § <br> VS. § <br> § <br> § <br> TT NUTRITION LLC d/b/a LURONG § <br> LIVING; THOMAS PEPE; AND § <br> TODD DUNPHY § <br> § <br> Defendants. § | CIVIL ACTION NO:_____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Eichner Group, Inc. d/b/a National Discount Merchant Services Corp. ("NDMS"), complains of Defendants, TT Nutrition LLC d/b/a/ Lurong Living ("Lurong"), Thomas Pepe and Todd Dunphy as follows:

**1.0  Parties**

1.01   NDMS is a California Corporation with its principal place of business in Manhattan Beach, California.

1.02   Defendant Lurong is a Texas Limited Liability Company with its principal place of business in Missouri City, Texas, which may be served with process by serving its registered agent TT Therapeutics LLC at 43 Old Woods Passage, Missouri City, Texas 77459.

1.03     Defendant Thomas Pepe is an individual residing in Houston, Texas, and may be served with process at his home located at 2910 Milam Street, Apt. 1530, Houston, Texas, 77006 or wherever he may be found.

1.04     Defendant Todd Dunphy is an individual residing in Missouri City, Texas, and may be served with process at his home located at 43 Old Woods Passage, Missouri City, Texas 77459 or wherever he may be found.

**2.0  Jurisdiction and Venue**

2.01     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1332 as the parties to this action are citizens of different states creating complete diversity and the matter in controversy exceeds $75,000, exclusive of interest and costs.

2.02     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) because it is the county of Lurong's principal office in the state and the county of residence for Defendants Pepe and Dunphy.

**3.0  Statement of Facts**

3.01     NDMS is an Independent Sales Organization ("ISO") and Merchant Services Provider ("MSP") engaged in the promotion and solicitation of payment processing services for merchants on behalf of Chesapeake Bank, NDMS's acquiring member and payment processor ("Chesapeake").  In other words, NDMS sells to merchants the process and ability to accept credit cards from their customers as an agent of Chesapeake.

3.02     NDMS is contractually responsible to Chesapeake for all amounts owed by Lurong under the Agreement and is authorized to act on behalf of Chesapeake or to

otherwise cause Chesapeake to act in accordance with the terms and conditions of the Agreement.

3.03   On or about March 27, 2019, Lurong entered a Merchant Agreement (the "Agreement") with NDMS and Chesapeake.[1]  Pursuant to the Agreement, NDMS, as an agent of Chesapeake, agreed to perform credit card processing services for Lurong.  In exchange for the services, among other things, Lurong agreed to pay a combined $.25 to the card brands (*e.g.,* Visa, Mastercard), Chesapeake, and NDMS for every authorization attempt, regardless of success or decline. The parties have operated under these terms for over two years.

3.04   Under the Agreement, NDMS, as an agent of Chesapeake, was granted access to the bank account of Lurong to cause ACH withdrawals on a monthly, or in some cases, more frequent basis, for collection of service fees, chargebacks and other amounts.

3.05   On or about June 9th through 10th of 2021, on information and belief, a rogue computer bot was able to access Lurong's website and run transactions in order to test credit card numbers for validity. It attempted to process 446,000 authorizations which ran on its merchant account with NDMS. While all these fraudulent charges were caught and declined by the card brands' fraud detection services, the attempted authorizations resulted in $118,444.16 in fees (approximately $1,500 of those fees were regular monthly fees).  Under the clear terms of the Agreement, Lurong is responsible for those fees and NDMS had the right to withdraw them from Lurong's account.

---

[1] A True and correct copy of the Agreement is attached hereto and incorporated herein for all purposes as <u>Exhibit 1.</u>

*PLAINTIFF'S ORIGINAL COMPLAINT*   *Page* **3**

3.06    Accordingly, on July 1, NDMS attempted an ACH withdrawal of $118,444.16 representing Lurong's June fees, which included the fees for the fraudulent authorizations. At that time, Lurong had secretly cleared its bank account to avoid paying those fees.

3.07    On July 2, 2021, Defendant Pepe informed NDMS that NDMS's withdrawal of the June fees had rendered Lurong unable to meet its payroll obligations. This statement was not true because Lurong had already cleared its account.

3.08    Unaware that Lurong had already withdrawn its account funds and that the ACH would not cover the $118,444.16 June fees, NDMS, at Pepe's request, loaned back to Lurong $22,316.70 in good faith to help it meet its payroll obligations. Lurong took possession of those funds knowing that the $118,444.16 had NOT been paid, thus further increasing NDMS's loss.

3.09    Additionally, by clearing its account Lurong has also failed to pay $1,735.79 for the fees incurred for its July 2021 transactions in July 2021. In total, as of the date of this filing, Lurong's actions have caused the NDMS actual loss in the amount of $142,496.65 for the June and July fees and the amounts sent to help Lurong meet payroll. NDMS's loss continues to increase monthly.

3.10    While NDMS has made clear, repeated requests for its loss, Lurong has ignored these requests and inexplicably refuses to pay.

3.11    Lurong has since stopped processing transactions under the Agreement, leaving NDMS with no ability to recover what Lurong owes through future transactions.

3.12    In connection with signing the Merchant Agreement, Defendants Pepe and Dunphy unconditionally guaranteed to pay NDMS all amounts due NDMS on every

claim against or indebtedness of Lurong.  NDMS would not have entered the Agreement without the personal guarantees of Pepe and Dunphy. Despite demand from NDMS to pay Lurong's obligations, Pepe and Dunphy have failed and refused to pay.

    3.13   All conditions precedent have been performed or have occurred.

**4.0**  Causes of Action

### Breach of Contract

    4.01   NDMS incorporates Paragraphs 1.0-3.13.

    4.02   NDMS and Lurong entered into an agreement, by offer and acceptance, supported by consideration in which NDMS agreed to provide credit card processing services to Defendant on behalf of Chesapeake.  In return, Lurong promised to pay fees for those services to NDMS.  NDMS fully performed all obligations and conditions precedent.  Lurong accepted and used those services.  Despite demand, Lurong continues to fail or to refuse to perform according to the terms of the agreement.  Lurong's failure to perform has caused actual damages to NDMS

### Guaranty

    4.03   NDMS incorporates Paragraphs 1.0-4.02.

    4.04   Attached to this Complaint as <u>Exhibit 1</u> is a copy of the guaranty agreement executed by Defendants Pepe and Dunphy.  The guaranty agreement is incorporated in the Complaint by reference.  As shown on <u>Exhibit 1</u>, Defendants Pepe and Dunphy unconditionally guaranteed to pay NDMS all amounts due NDMS on every claim against or indebtedness of Lurong.

    4.05   Under the terms of the Guaranty, Defendants Pepe and Dunphy are indebted to NDMS for Lurong's debt described in this Complaint.

**Fraud**

4.06    NDMS incorporates Paragraphs 1.0-4.05.

4.07    Lurong and Pepe made representations to NDMS that the ACH of Lurong's June fees left Lurong without the ability to meet its payroll obligations. Lurong and Pepe made this statement knowing that Lurong had already secretly cleared its bank account and that the ACH would be returned for insufficient funds.

4.08    Those representations were false and material.

4.09    Defendants knew those representations were false when they were made and with the intent to induce NDMS to pay its June payroll out of funds NDMS believed it had already collected from Lurong. NDMS relied on those representations to it's detriment.

**5.0  Attorney's Fees**

5.01    Lurong's default has made it necessary for NDMS to incur attorney fees to file suit.  NDMS is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38.  NDMS is also entitled to recovery attorney's fees pursuant to Article 10.8 of the Agreement, which states "If Bank takes legal action against Merchant for any amounts due Bank herein, Merchant shall pay the costs and attorneys' fees incurred by Bank, whether suit is commenced or not." Pursuant to the usual and customary fees for a claim of this type, NDMS is entitled to reasonable and necessary attorney fees for preparation, trial, and appeal of this case.

**6.0  Conditions Precedent**

6.01    All conditions precedent to NDMS's claim for relief have been performed or have occurred.

7.0 **Relief Requested**

7.01 Plaintiff NDMS prays that Defendants Lurong, Pepe and Dunphy be cited to appear and answer herein and that upon final hearing of this cause that the court award the following:

    a.    Judgment for NDMS's actual damages;

    b.    Exemplary Damages;

    c.    Reasonable and necessary attorney fees with contingent amounts in the event of any appeal to any appellate court;

    d.    Prejudgment and post-judgment interest as allowed by law;

    e.    Costs of suit;

    f.    All other and further relief, in law and in equity, to which NDMS may be entitled.

Respectfully submitted,

/s/ Jason Augustine
Jason Augustine
State Bar No. 24001672
REEVE | AUGUSTINE | ALARAKHIA, PLLC
580 S. Denton Tap Road, Suite 120
Coppell, Texas 75019
jason@reeveaugustine.com
Telephone:    (972) 393-4110
Fax:    (972) 346-6898

ATTORNEY FOR NATIONAL DISCOUNT MERCHANT SERVICES CORP.